

2003 Decisions

4-8-2003

# USA v. Gori

Precedential or Non-Precedential: Precedential

Docket 02-2409

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Gori" (2003). *2003 Decisions.* Paper 597.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/597

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 8, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2409

UNITED STATES OF AMERICA

v.

VINCENT LOUIS GORI,

Vincent Gori,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 00-cr-00247-5)
District Judge: Honorable Joel A. Pisano

Submitted Under Third Circuit LAR 34.1(a)
March 14, 2003

Before: BECKER, *Chief Judge*, RENDELL and AMBRO,
*Circuit Judges*

(Opinion filed April 8, 2003)

Justin T. Loughry, Esquire
Loughry and Lindsay, L.L.C.
714 East Main Street, Suite 1A
Moorestown, New Jersey 08057

*Attorney for Appellant*

Christopher J. Christie
 United States Attorney
George S. Leone
 Chief, Appeals Division
Sabrina G. Comizzoli, Esquire
Office of the United States Attorney
970 Broad Street
Newark, New Jersey 07102-2535

*Attorneys for Appellee*

---

## OPINION OF THE COURT

---

AMBRO, *Circuit Judge*:

Vincent Gori challenges the sentence imposed for his involvement in a conspiracy to distribute a controlled substance. We affirm the District Court.

## I.

The Government charged Gori, under 21 U.S.C. § 846, with one count of conspiracy to violate 21 U.S.C. § 841(a)(1), which makes it illegal "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."[1] Although the indictment did not allege the precise weight of drugs involved in the conspiracy, it charged Gori with "intent to distribute more than 500 grams of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii) mandates a minimum ten-year sentence for distributing more than 500 grams of a "mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

Gori pled guilty, but specifically refused to stipulate to the amount of drugs involved. He waived his right to a jury trial on this issue and agreed that the District Court should

---

1. 21 U.S.C. § 846 states that conspiracy to violate, *inter alia*, § 841 "shall be subject to the same penalties as those prescribed for [§ 841], the commission of which was the object of the . . . conspiracy."

determine, beyond a reasonable doubt, the amount of methamphetamine he distributed. Based on the Government's evidence of eight transactions, in which Gori sold a total of 969.8 grams of a mixture containing methamphetamine to an undercover law-enforcement officer, the Court found that more than 500 grams of a mixture containing methamphetamine were involved in the conspiracy. Therefore, it sentenced Gori to the statutory minimum of ten years under § 841(b)(1)(A)(viii). In addition, the Court refused to grant Gori's motion for a downward departure from the United States Sentencing Guidelines ("U.S.S.G.") based on his claim that the average purity of the mixtures he sold in those eight transactions was only 2.7 percent. This appeal followed.

## II.

### A. Due process

Gori contends that his indictment did not specifically allege the amount of methamphetamine involved in the conspiracy, thereby denying him due process. He argues that "the amount of drugs allegedly involved should be held to constitute an element of the offense" and thus the Government's "failure to allege the specific amount of drugs involved constitutes a failure to charge a crime." Gori further argues that the Government's failure to mention in its indictment the specific amount of drugs involved violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He reasons that the U.S.S.G.'s guideline ranges are essentially statutory maximum punishments for distribution of various amounts of drugs. Moving from one sentencing range to a higher range is, in Gori's view, equivalent to increasing the punishment for a crime beyond a statutory maximum, requiring that the factors responsible for the increase in range (here, the amount of drugs involved) be alleged in the indictment and proved to a factfinder beyond a reasonable doubt.

We discern no due process violation. The indictment stated clearly the crime charged against Gori. Moreover, the indictment's allegation that the conspiracy involved "more than 500 grams of methamphetamine" put Gori on notice

that, if convicted, he would receive a sentence of at least ten years under § 841(b)(1)(A)(viii).

Moreover, this case does not offend *Apprendi.* It holds that sentence enhancements, other than a prior conviction, that increase a criminal defendant's punishment beyond the statutory maximum for the crime charged must also be included in the indictment and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. Gori's sentence — the statutory minimum — logically cannot exceed the statutory maximum. Hence *Apprendi* is not brought into play. *See United States v. Williams,* 235 F.3d 858, 863 (3d Cir. 2000) (holding that *Apprendi* is not implicated by applications of the U.S.S.G. that do not result in a sentence exceeding the statutory maximum sentence for the substantive crime charged).

### B. Aggregation of multiple transactions to determine amount of methamphetamine involved

Gori alleges the District Court erred in determining that more than 500 grams of methamphetamine were involved in the conspiracy because no single sale or transaction involved over 500 grams. He argues that § 841(b)(1)(A) penalizes a "violation" of § 841(a) and that each sale or transaction should be viewed as a separate violation. He cites *United States v. Winston,* 37 F.3d 235, 240-41 (6th Cir. 1994), for the proposition that a court may not aggregate multiple drug transactions in determining the amount of drugs involved for § 841(b) purposes.

We disagree. *Winston*'s holding disallowing aggregation of multiple drug transactions for § 841(b) purposes did not extend to multiple drug transactions as part of a conspiracy. Here, all eight drug transactions comprise the conspiracy to which Gori pled guilty. While no Third Circuit case squarely addresses this issue, we find persuasive *United States v. Pruitt,* 156 F.3d 638, 644-45 (6th Cir. 1998), which aggregated multiple transactions committed as part of a conspiracy in determining whether the amount of drugs involved reached § 841(b)'s threshold. The Court reasoned that "a conspiracy is a single, unified offense." *Id.* at 644; *see also United States v. Walker,* 160 F.3d 1078, 1093 (6th Cir. 1998) ("[A] conspiracy is a single violation of

the drug laws, and the fact that this particular conspiracy was characterized by separate transactions is a fact of no legal significance."); *United States v. Reyes*, 930 F.2d 310, 312 (3d Cir. 1991) (noting that, because "the conspiracy count . . . does not charge three separate offenses but a single offense, i.e., a conspiracy having multiple objectives[,] . . . [t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous") (alteration in original) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)).

Even were we not to aggregate transactions in applying § 846, Gori's sentence would still be proper. *United States v. Boone*, 279 F.3d 163 (3d Cir. 2002), in interpreting the U.S.S.G., noted that "a sentence in a criminal conspiracy is based upon all relevant conduct and not merely offense conduct." *Id.* at 177. Therefore, in computing Gori's sentence under the U.S.S.G., the District Court was entitled to take into account the 500 grams of methamphetamine mixture involved in the conspiracy.[2]

## C. Whether what Gori sold was a "mixture"

Gori alleges that he did not sell more than 500 grams of a mixture containing methamphetamine, for which § 841(b)(1)(A)(viii) prescribes a penalty. He reasons that, because the drugs he sold were so diluted they were effectively unmarketable, they were not a "mixture." He therefore contends that his sentence should reflect not the total weight (*i.e.*, methamphetamine plus cutting agent) of the drugs he sold, but only the weight of the pure methamphetamine contained therein — twenty-seven grams.

We reject this argument as well. While § 841 does not explicitly define "mixture," the Supreme Court has said that a drug combined with a carrier medium "used to facilitate

---

2. As Gori's Pre-Sentence Report noted, under U.S.S.G. § 2D1.1(c)(4), this amount of methamphetamine dictates an offense level of 32 and hence a sentence of 121 to 151 months (when the Criminal History Category is I). The Pre-Sentence Report recommended a two-point decrease for acceptance of responsibility, leaving an offense level of 30 and a sentencing range between 97 and 121 months. The District Court sentenced Gori to 120 months imprisonment.

the distribution of the drug" is a mixture. *Chapman v. United States*, 500 U.S. 453, 466, 468 (1991) (holding that § 841 requires that LSD blotter paper be included in weight of a "mixture" containing a detectable amount of LSD); *see United States v. Berroa-Medrano*, 303 F.3d 277, 281, 284-85 (3d Cir. 2002) (rejecting argument that highly impure heroin "is neither a 'mixture' nor a 'substance' . . . as intended by [§ 841] or the Sentencing Guidelines"); *United States v. Gurgiolo*, 894 F.2d 56, 60-61 (3d Cir. 1990) ("Drugs containing detectable amounts of [illegal] substances . . . should be weighed as a whole, *irrespective of purity*.") (emphasis added). Thus, whether a drug plus its carrier is a mixture turns not on the purity of the controlled substance contained therein, but rather on how "combined" the substances are, *see Chapman*, 500 U.S. at 462, and whether the impure drug is "marketable," *see Berroa-Medrano*, 303 F.3d at 284. For example, a drug plus a bottle in which it is packaged would not be a mixture, *Chapman*, 500 U.S. at 463, whereas a drug combined with a cutting agent would be a mixture, *Berroa-Medrano*, 303 F.3d at 284.[3]

---

3. Our holding is also consistent with the U.S.S.G.'s method of calculating a drug's weight. *See* U.S.S.G. § 2D1.1(c), Note A ("[T]he weight of a controlled substance . . . refers to the entire weight of any mixture or substance *containing a detectable amount of the controlled substance.*") (emphasis added); *id.* § 2D1.1, cmt. n.1 (" 'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that *must be separated* from the controlled substance before the controlled substance can be used.") (emphasis added). *Compare United States v. Rodriguez*, 975 F.2d 999, 1005-07 (3d Cir. 1992) ("bricks" with cocaine layered on top and boric acid inside — constructed to deceive the buyer into believing he was purchasing pure cocaine — is not a "mixture" because "boric acid . . . did not facilitate the distribution of the cocaine"; rather, "the whole mass, if mixed, would render the resulting product unsalable and unusable — and probably even toxic"), *with United States v. Touby*, 909 F.2d 759, 772-73 (3d Cir. 1990) (considering entire weight of Euphoria pill for U.S.S.G. purposes even though the pill was only 2.7 percent pure). Gori does not bring a challenge under the U.S.S.G., however. Rather, he alleges that his involvement in the conspiracy did not implicate § 841(b)(1)(A)(viii)'s *statutory* penalty provision because the drugs he sold did not fall into the statutory definition of "mixture."

Furthermore, we decline to read a "purity" requirement into § 841's definition of "mixture" because the statute already provides that a drug must contain a "detectable amount of methamphetamine" to give rise to criminal liability. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Congress has made the policy decision that purity is not an element of § 841(b)(1)(A)(viii). For us to go further crosses the Rubicon to the forbidden shore of judicial legislation. We decline the invitation.

Whether the drugs Gori sold contain a "detectable amount of methamphetamine" is a question of fact, the determination of which we overturn only if clearly erroneous. *See United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993). We do not believe the District Court clearly erred in finding that drugs Gori sold, which ranged between 1.2 percent and 5.9 percent pure and were on average 2.7 percent pure, contained a "detectable amount of methamphetamine." *Cf. United States v. Touby*, 909 F.2d 759, 772-73 (3d Cir. 1990) (considering entire weight of Euphoria pill for U.S.S.G. purposes even though the pill was only 2.7 percent pure).

**D. Failure to grant a downward departure due to the methamphetamine's dilution**

Gori challenges the District Court's failure to depart downward from the U.S.S.G. due to the low purity (as noted, 2.7 percent on average) of the methamphetamine mixture he sold. We may review a claim for downward departure only when the District Court was not aware of its authority to grant a downward departure. *United States v. Georgiadis*, 933 F.2d 1219, 1222 (3d Cir. 1991) ("If we determine the district court was aware of its authority to depart from the Guidelines, and chose not to, we are without power to inquire further into the merits of its refusal to grant [appellant's] request."); *United States v. Denardi*, 892 F.2d 269, 272 (3d Cir. 1989); *see also Miele*, 989 F.2d at 668 n.11. In this case we have jurisdiction because the District Court did not believe it had the authority to depart downward.

The District Court was correct in refusing to depart downward, because to do so based on the low quality of a

drug is an improper exercise of discretion. *See, e.g., United States v. Beltran*, 122 F.3d 1156, 1159-60 (8th Cir. 1997); *United States v. Upthegrove*, 974 F.2d 55, 56-57 (7th Cir. 1992); *United States v. Davis*, 868 F.2d 1390, 1393 (5th Cir. 1989); *cf. United States v. Benish*, 5 F.3d 20, 27-28 (3d Cir. 1993) (stating that the District Court lacked discretion to depart downward based on the age and sex of marijuana plants, which made them "possibly weak").

Downward departures are proper only "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). In this case, as the *Upthegrove* Court noted, the Sentencing Commission explicitly decided to make a defendant's sentence turn on a drug's weight, not its purity. *Upthegrove*, 974 F.2d at 56. "If district courts could depart from the Drug Quantity Table anytime they are faced with drugs of less than 'average' purity, the Sentencing Commission's decision to focus on the weight of the drugs in sentencing would be eviscerated." *Id.*

## E. Claim that methamphetamines are a Schedule III drug rather than a Schedule II drug

Finally, Gori argues that 21 U.S.C. § 812(c) classifies powdered methamphetamine as a Schedule III drug, for which the maximum punishment is five years, rather than the ten years he received for a Schedule II drug. Gori acknowledges that 21 C.F.R. § 1308.12(d) reclassifies methamphetamine as a Schedule II drug, but nonetheless contends that the statute's classification must take precedence over that in the regulation.

Whatever the validity of this argument, it is irrelevant here. Section 841(b)(1)(A)(viii) imposes a minimum ten-year penalty for illegal activity involving "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." The clear language of § 841(b)(1)(A)(viii) indicates that its ten-year minimum penalty depends on whether a defendant has dealt in more than 500 grams of a

methamphetamine mixture and not at all on the schedule in which methamphetamine belongs.

Moreover, Gori is wrong that § 812's classification of methamphetamine supersedes the subsequent regulation. 21 U.S.C. § 811(a)(1) expressly authorizes the Attorney General to "transfer between such schedules any drug or other substance" upon making findings and in accordance with typical notice and comment rulemaking procedures. 21 C.F.R. § 1308.12(d) was properly promulgated. *See, e.g.*, *United States v. Roark*, 924 F.2d 1426, 1428 (8th Cir. 1991). Therefore the Attorney General validly reclassified methamphetamine as a Schedule II drug.

\* \* \* \* \* \*

We affirm the District Court's sentence.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*