**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3383
_____

UNITED STATES OF AMERICA

v.

MARC HERNANDEZ,
a/k/a Marky D.,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-14-cr-00070-001)
District Judge: Hon. Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
(June 6, 2023)

Before: HARDIMAN, AMBRO, and FUENTES, *Circuit Judges*.

(Filed: June 8, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Marc Hernandez appeals his life sentence for his involvement in a drug-trafficking conspiracy. He challenges the District Court's method of calculating the drug quantity attributable to him and the Court's finding that he was an "organizer or leader" of the conspiracy under United States Sentencing Guidelines (U.S.S.G.) § 3B1.1(a). Neither argument is convincing, so we will affirm.

I

The Government prosecuted Hernandez for his involvement with the "Southside Gang," a criminal enterprise that distributed large amounts of controlled substances in York, Pennsylvania. Hernandez was jointly tried with 11 co-defendants over 33 days. The facts of the case are recounted in greater depth in our opinion on a previous appeal in this matter, *United States v. Williams*, 974 F.3d 320, 336–39 (3d Cir. 2020).

The jury found Hernandez guilty of five drug- and firearm-related counts. Relevant here are his convictions on Count 1 for conspiracy in violation of the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § 1962(d), and on Count 2 for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846.

Under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Alleyne v. United States*, 570 U.S. 99, 102 (2013), the jury had to determine the quantities of drugs attributable to Hernandez for purposes of his mandatory minimum and statutory maximum sentences. *See* 21 U.S.C. § 841(b) (establishing minimum and maximum sentences). In instructing the jury regarding this role, the District Court stated: "you should consider all controlled substances that members of the conspiracy actually

2

possessed with intent to distribute or distributed." App. 6791. The jury attributed 280 grams or more of crack cocaine and 5 kilograms or more of powder cocaine to the conspiracy, which set Hernandez's minimum sentence at 10 years' imprisonment and his maximum sentence at life, 21 U.S.C. § 841(b)(1)(A). The District Court then sentenced Hernandez to life imprisonment.

Hernandez and many of his co-defendants appealed their convictions and sentences. We resolved the appeals in our consolidated *Williams* opinion. 974 F.3d at 339. We affirmed the convictions, *id.* at 380, but vacated Hernandez's sentence and remanded for resentencing because the District Court did not offer him the right to allocute at sentencing, *id.* at 375. So we did not reach most of Hernandez's other sentencing arguments, some of which he raises again here. *See id.* at 375 n.42.

Our Court did, however, reach Hernandez's arguments regarding the method of calculating drug quantities attributable to conspiracy defendants in the context of his co-defendants' appeals, settling on a two-pronged approach. First, we reaffirmed our prior position that a defendant's *maximum* sentence is based on "the quantity attributable to 'the conspiracy as a whole.'" *Id.* at 365 (citing *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003), *vacated on other grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005)). Second, we held that a defendant's *mandatory minimum* is based on drug quantities "that were within the scope of, or in furtherance of, the conspiracy and were reasonably foreseeable to the defendant as a consequence of the unlawful agreement." *Id.* at 366. We determined that this second holding meant there was error, because "the jury rendered its verdicts by considering only the amount of drugs involved

in the conspiracy as a whole." *Id.* at 367. But because Hernandez's co-defendants' "sentences include[d] incarceration in excess of [the] mandatory minimum," the error, which went only to the mandatory minimum, "did not affect their substantial rights" and did not require reversal under plain-error review. *Id.*

At Hernandez's resentencing, the District Court calculated a total offense level of 43 and a criminal history category of V, resulting in a Guidelines recommendation of life imprisonment. Included in this calculation was a four-level enhancement under Guidelines § 3B1.1(a) because the Court concluded Hernandez "took a leadership role in this conspiracy." App. 172. The District Court re-imposed a life sentence, including terms of life imprisonment for both Counts 1 and 2. Hernandez timely appeals.[1]

## II

Hernandez argues that the *Williams* panel erred in setting out the process for calculating the quantity of drugs attributable to a conspiracy defendant charged under 21 U.S.C. § 846 or under RICO, 18 U.S.C. § 1963. He claims quantities cannot be aggregated across the entire conspiracy to determine minimum and maximum penalties, but instead must be limited to discrete violations of 21 U.S.C. § 841(a). Section 841(a) criminalizes the manufacture, distribution, or dispensing of a controlled substance (or possession with intent to do so). Section 846, Hernandez's statute of conviction for Count

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II, criminalizes conspiring to violate § 841(a), among other provisions.[2]

As an initial matter, the prior panel *agreed* with Hernandez that the method of calculating drug quantities for purposes of the *mandatory minimum* was erroneous. *Williams*, 974 F.3d at 367. But because Hernandez and his co-defendants had not preserved the argument, we applied plain-error review. *Id.* at 361–62, 367. Hernandez did not raise the mandatory minimum issue at his resentencing, and does not challenge the application of plain-error review here. Nor does he explain how any error in the calculation of his mandatory minimum affected his substantial rights at the third prong of plain-error review. *See Johnson v. United States*, 520 U.S. 461, 467 (1997). He has therefore forfeited any argument that the error warrants reversal. *See United States v. Peppers*, 899 F.3d 211, 235 (3d Cir. 2018). Regardless, Hernandez's life sentence far exceeds the mandatory minimum of ten years, so as we concluded for Hernandez's co-defendants, we cannot see how the error affected his substantial rights. *See Williams*, 974 F.3d at 367.

The bigger question, then, is about the calculation of drug quantities for purposes of his *maximum* sentence. As Hernandez explains, if his statutory maximums were improperly calculated, then his "life sentences on [Counts 1 and 2] would be illegal, affecting his substantial rights." Reply Br. 13–14. But his challenge to *Williams*'s

---

[2] RICO offenses carry a maximum sentence of 20 years' imprisonment unless "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963. So the validity of Hernandez's Count 1 RICO sentence, like the validity of his Count 2 drug-conspiracy sentence, turns on whether the drug quantities can support a life sentence under § 841(b). *See Williams*, 974 F.3d at 362 n.31.

approach to statutory maximums—using the drug quantity attributable to the entire conspiracy, 974 F.3d at 365—is foreclosed by binding precedent and the law of the case.

Because *Williams* is a precedential opinion of this Court, we cannot revisit its holding absent intervening authority. *See Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996). Hernandez cites no such authority, and we know of none. Nor does the fact that the prior precedential opinion was issued as part of the same criminal matter somehow weaken its binding effect. So *Williams* controls and dictates affirmance.

Even if Hernandez were correct that we should treat *Williams* only as the "law of the case" and not binding circuit precedent, we would still follow it. *See In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998) ("[O]ne panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case."). Hernandez asks us to apply the exception to the law-of-the-case doctrine for when "the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 718. Because *Williams* was not clearly erroneous, the exception does not apply.

*Williams* reasoned that statutory maximums in this context are based on "an offense-specific, not a defendant-specific, determination." 974 F.3d at 365 (cleaned up). Because the offense is conspiracy, the maximum is tied to the drug quantities attributable to that conspiracy. Hernandez fails to show that this approach is clearly erroneous. He makes a textual argument based on 21 U.S.C. § 846, which states that conspirators "shall be subject to the same penalties as those prescribed for the offense" that they conspire to commit. 21 U.S.C. § 846. In *United States v. Rowe*, we held that the drug quantities

6

involved in multiple violations of § 841(a)—the offenses Hernandez conspired to commit—cannot be aggregated for purposes of statutory penalties under § 841(b). 919 F.3d at 759–61 (3d Cir. 2019). But Hernandez's desired conclusion, that drug quantities also cannot be aggregated when a defendant is charged with conspiracy to violate § 841(a), does not necessarily follow. To the contrary, the *Williams* panel and this panel are bound by *United States v. Gori*, which held that multiple drug transactions involving the same defendant *can* be aggregated when the defendant is charged with conspiracy. *Gori*, 324 F.3d 234, 237 (3d Cir. 2003); *see also Williams*, 974 F.3d at 366 ("*Gori* is consistent with *Rowe* because conspiracy law encompasses a continuing agreement to commit several offenses . . . ."). Hernandez's proposed statutory interpretation contravenes that holding.

In sum, Hernandez offers no argument that the error in the calculation of the drug quantities for purposes of his mandatory minimums affected his substantial rights, and his challenge to the calculation of drug quantities for the purposes of his statutory maximum is foreclosed by binding precedent and the law of the case.

## III

Hernandez also appeals the application of a four-level enhancement to his total offense level for his role as "an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). This was not clear error. *See United States v. Richards*, 674 F.3d 215, 223 (3d Cir. 2012) (explaining that a clear-error standard is appropriate when reviewing the application of Guidelines provision that involves "a predominantly fact-driven test").

7

Hernandez argues that the District Court based the enhancement entirely on his supplying drugs and firearms to other dealers. Though the District Court noted that fact, Hernandez's role as a supplier was not the only evidence supporting the Court's finding that Hernandez was a leader of criminal activity. Hernandez not only sold drugs to other dealers; he fronted drugs and required payment only after the dealers sold them. When dealers failed to pay, members of the conspiracy threatened the debtors or demanded violent favors on Hernandez's behalf to satisfy unpaid debts. We have found similar facts indicative of a leadership role under § 3B1.1(a). *See United States v. Adair*, 38 F.4th 341, 354–55 (3d Cir. 2022). Further, the District Court justifiably relied on testimony describing Hernandez's continued leadership role while he was incarcerated: "[H]e runs the show, he calls the shots, period." App. 287.

Hernandez also contends the unstructured nature of the conspiracy precluded his leadership role. This reprises his argument at trial that the "South Side" was not a conspiracy at all, but instead "expressions of a South Side identity reflected at most a kind of autochthonous pride, a loyalty borne of a common home." *Williams*, 974 F.3d at 338. But the jury rejected that theory. Besides, a conspiracy's relatively unstructured nature does not mean that nobody involved had "high-level directive power or influence over criminal activity." *See Adair*, 38 F.4th at 354 (so defining "leader" under § 3B1.1(a)).

Considering the evidence of the conspiracy's operation and Hernandez's role, the District Court's finding that Hernandez was a "leader" of criminal activity was not clearly erroneous.

\*     \*     \*

For the reasons stated, we will affirm Hernandez's judgment of sentence.