

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2004

# USA v. Minutoli

Precedential or Non-Precedential: Precedential

Docket No. 02-3108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Minutoli" (2004). 2004 Decisions. Paper 444.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/444

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No. 02-3108

UNITED STATES OF AMERICA

v.

LISA ANN MINUTOLI,
Appellant

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
D.C. Crim. No. 01-cr-00176
District Judge:  The Honorable Donetta
W. Ambrose

Argued:  February 25, 2004

Before: RENDELL, BARRY, and
FISHER, Circuit Judges

(Opinion Filed: July 8, 2004 )

Stanton D. Levenson, Esq. (Argued)
1715 Gulf Tower
Pittsburgh, PA   15219

Attorney for Appellant

Mary Beth Buchanan
United States Attorney
Office of the United States Attorney
Bonnie R. Schlueter, Esq.
Michael L. Ivory, Esq.
Kelly R. Labby, Esq. (Argued)
633 U.S. Post Office & Courthouse
Pittsburgh, PA   15219

Attorneys for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge

We are called upon to decide whether we have jurisdiction to review a district court's discretionary refusal to downward depart from the applicable Sentencing Guideline range when that refusal is based in whole or in part on an alleged mistake of fact. The well-established precedent of this Court mandates the answer to this question, and the answer is a ringing "no."

**I.  INTRODUCTION**

On August 29, 2001, a federal grand jury returned a two-count indictment against Lisa Ann Minutoli ("Minutoli"). Count One charged Minutoli with possession with intent to distribute a mixture and substance containing a

detectable amount of 3,4-methylenedioxymethamphetamine (MDMA), in the form of "Ecstasy" tablets, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Count Two charged unlawful importation into the United States of said tablets, in violation of 21 U.S.C. §§ 952(a) and 960(b)(3). Minutoli pled guilty to Count Two, and Count One was subsequently dismissed.

It was not disputed that under the United States Sentencing Guidelines (USSG), Minutoli's base offense level was 29 and her criminal history category was I, resulting in a range of 87-108 months' imprisonment. Prior to sentencing, however, Minutoli moved for a downward departure, based on reduced mental capacity (USSG § 5K2.13) and coercion and duress (USSG § 5K2.12), and for a two-level reduction in her offense level as a minor participant. (USSG § 3B1.2(b)). The District Court denied these requests and, on July 25, 2002, sentenced Minutoli to 87 months' imprisonment, to be followed by three years' supervised release. In denying the downward departure, the District Court stated, in part:

> [W]hile I recognize my ability to depart under 5K2.12, without threat of physical injury resulting from unlawful actions of a third party, which I don't believe was in the testimony, or substantial damage to property resulting from unlawful action of a third

party, the coercion and duress does not rise to the level that warrants departure. (emphasis added).

In denying her request for an adjustment for minor role, the District Court stated:

> My understanding of this case and what I believe has been demonstrated by the evidence is that the defendant was not just a mere, to use an adjective, courier. Her importance to the success of the venture was vital.
>
> * * *
>
> But, as I indicated, I do not believe, based on the evidence, that you were a minor participant because of your importance, your knowledge of these – the nature and scope of the enterprise.

Minutoli raises two issues on appeal. First, she contends that the District Court made a factual error in concluding that the testimony at the sentencing hearing did not support a finding of physical threats and, thus, she was wrongly denied a downward departure under § 5K2.12. Second, she contends that as a "mere" drug courier, she was entitled to a downward adjustment for her minor role in

2

the offense.[1]  We will affirm the judgment and sentence.

## II.  BACKGROUND

Sometime in the spring of 2001, Minutoli, a long-time drug user, was recruited as a drug courier by a woman named Christine Segetti, whom she had met through her personal drug dealer. Segetti offered Minutoli $20,000, in return for which she traveled from Los Angeles to Paris and then to Amsterdam, where she was given Ecstacy tablets by a man named Joseph, and returned with the drugs to New York City.[2]  While in New York City, she gave the drugs, minus a small portion for herself, to one Thomas-Elan.  After spending about a week-and-a-half with Thomas-Elan and Segetti, she returned to Los Angeles, where she met a man she knew as David, but whose name was, in fact, Elly, and with whom she carried on a romantic relationship for four months.

Soon after they met, David informed Minutoli that the organization with which they were affiliated was an international drug ring and that he planned to break away and begin his own smuggling operation.  Thus, in June 2001, David and Minutoli traveled to Tijuana, Mexico, where they met with persons from several countries and planned the operation, although Minutoli disclaimed any role in the planning.  After returning from Tijuana, David told Minutoli that she was to go to Germany and transport drugs back to the United States.  Minutoli did not want to make the trip and argued with David about it, angering him to the point that he threw a car stereo at her.  When David threatened to kill her, she agreed to go.  The night before she left, and to assure that she would do what she had agreed to do, David placed his gun on top of a bedroom dresser before getting into bed with her.  David was often verbally abusive to her, physically threatened her, and told her that he had killed people before. Minutoli felt trapped by him both physically and financially, in part because he continuously provided drugs to her, escalating her addiction.  In sum, she claimed, he "broke" her.[3]

---

[1]The District Court carefully considered this request; discussed the factors we deemed important in United States v. Headley, 923 F.2d 1079 (3d Cir. 1991), and United States v. Isaza-Zapata, 148 F.3d 236 (3d Cir. 1998); and correctly determined that an adjustment for minor role was not warranted.  The correctness of that determination is underscored by our subsequent decision in United States v. Rodriguez, 342 F.3d 296 (3d Cir. 2003).  We see no reason to discuss the minor role contention further.

[2]Minutoli testified that she only received $10,000, and claims that that was later stolen from her by Segetti.

---

[3]This testimony was elicited at sentencing from Minutoli and from Dr. Lawson Bernstein, a forensic neuropsychiatrist.  Dr. Bernstein

On July 24, 2001, David drove Minutoli to the Los Angeles airport and warned her that people would be watching her while she was in Germany. Upon her arrival in Germany, she checked into a hotel and informed her contact in Amsterdam, a man named Daniel, of her location. Daniel provided her with money for her hotel and periodically stopped by to check on her. Additionally, David phoned her nearly every day. The day before her return to the United States, Daniel provided her with a suitcase for the trip.

Upon her arrival at the Pittsburgh International Airport, Minutoli was questioned and selected for examination by a United States Customs Inspector. When asked to open the suitcase Daniel had provided to her, she claimed that she had forgotten the combination to the lock. After obtaining verbal permission, the Inspector pried the suitcase open. In plain view lay numerous plastic bags containing white tablets. These tablets, numbering 69,805, were MDMA or "Ecstasy," with an estimated street value of between $1,396,100 and $2,094,150. Found in

___

admitted on cross-examination that his diagnosis and conclusion were almost exclusively based upon representations made to him by Minutoli, and cited to her disclosures that David provided her with drugs, coerced her into degrading sexual practices, verbally abused her, made her financially dependent upon him, and implied "physical harm in a variety of actions."

Minutoli's other bags were a business diary and a spiral-bound notebook. The business diary contained a list of controlled substances with monetary amounts next to them, and the spiral-bound notebook contained several pages of individuals' names with monetary amounts next to them. The notebook list appeared to be a record of drug debts.

## III. DISCUSSION

It is well-established in this Court that we lack jurisdiction to review the merits of a district court's discretionary decision to refuse a downward departure under the Sentencing Guidelines once we determine that the district court properly understood its authority to grant a departure:

> If we determine the district court was aware of its authority to depart from the Guidelines, and chose not to, we are without power to inquire further into the merits of its refusal to grant [the defendant's] request. See United States v. Denardi, 892 F.2d 269, 272 (3d Cir. 1989). Stated differently, we have jurisdiction to decide whether a sentencing court erred legally when not making a requested discretionary downward departure, but we cannot hear a challenge to the

4

merits of a sentencing court's discretionary decision not to depart downward from the Guidelines. Id.

United States v. Georgiadis, 933 F.2d 1219, 1222 (3d Cir. 1991); see also, e.g., United States v. Gori, 324 F.3d 234, 239 (3d Cir. 2003); United States v. Powell, 269 F.3d 175, 178-80 (3d Cir. 2001); United States v. Stevens, 223 F.3d 239, 247-48 (3d Cir. 2000); United States v. Evans, 49 F.3d 109, 111 (3d Cir. 1995); United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994); United States v. Gaskill, 991 F.2d 82, 84 (3d Cir. 1993); United States v. Love, 985 F.2d 732, 734, n.3 (3d Cir. 1993); United States v. Higgins, 967 F.2d 841, 844 (3d Cir. 1992).[4] The Courts of Appeals, virtually unanimously, accept this general rule whether that rule be framed in jurisdictional terms, as our cases frame it, or in terms of unfettered discretion where there has not been an incorrect application of the Guidelines within the meaning of 18 U.S.C. § 3742.

The District Court understood its authority to depart, and there was nothing complicated or ambiguous about the Court's statement: "I recognize my ability to depart." We could say, and it would not be the least bit facile to do so, that the District Court did precisely what we have encouraged district courts to do, i.e. indicate an awareness of the ability to depart, and that, therefore, under our well-established precedent, we lack jurisdiction to review the discretionary denial of the departure.[5] Game, set, and match.

But, says the dissent, the District Court did not mean what it said. Rather, the argument goes, the Court was being disingenuous because it "was actually concluding" (emphasis added) "that it lacked the authority to [depart] based on the facts of this case." Accordingly, the dissent continues, "the sentence imposed 'resulted from' an incorrect application of the Guidelines, and we can review it

---

[4]Parenthetically, if, as the dissent states, only a fraction of the numerous appeals we decide involving jurisdiction to review denials of downward departures have resulted in precedential opinions, it is because our law in this area is settled, not because it is underdeveloped. And, we note, the cases the dissent briefly synopsizes in note 4 almost without exception recite our well-settled law in this area.

[5]While district courts need not utter the magic words, "I recognize I have authority to grant the downward departure," we have strongly encouraged them to do so, in order both to simplify our inquiry and to eliminate any ambiguity. See Georgiadis, 933 F.2d at 1223. We reiterate this encouragement whenever guideline sentencing is discussed at such events as our Court's bench/bar conferences.

pursuant to 18 U.S.C. § 3742(a)(2)." Dissent at 1. Indeed, concludes the dissent, "we can, and should" assume jurisdiction over all appeals in which it is alleged that the District Court made a clearly erroneous factual determination in the course of denying a discretionary downward departure, for we must assure that the District Court accurately understood and correctly determined the facts of the case. Completing the circle, an erroneous factual finding is an incorrect application of the guidelines that can be reviewed. It bears repetition that the alleged error here was not whether the District Court mistakenly believed it lacked the authority to depart but whether, at the sentencing hearing, there was testimony of threats of physical injury, a paradigm factual inquiry.

While we have not explicitly stated that we lack jurisdiction to review the allegation of a factual error in the course of a discretionary refusal to depart, that conclusion is surely implicit in our cases. Moreover, we reject out of hand the dissent's statement that "our decision in [United States v.] McQuilkin[, 97 F.3d 723 (3d Cir. 1996)] has already placed us on that side of the issue." Dissent at 13. Indeed, says the dissent, McQuilkin is "the case that most clearly stands for the proposition that we can review for clear error in a case like this one." Id. at 13.

But McQuilkin was not a case "like this one." In McQuilkin, the District Court refused to grant a discretionary downward departure for extraordinary physical impairment, finding that the defendant's "condition was 'not that type of an impairment so severe and complete that the downward departure [was] ... warranted.'" Id. at 730. Then Judge, now Chief Judge, Scirica, writing for the majority, explained that this statement could mean one of two things: either "that McQuilkin's impairment was not extraordinary enough to allow the court to depart under the authority of § 5H1.4; or that the nature of the impairment was sufficiently extraordinary to allow the court to depart, but that the court elected not to depart on this occasion." Id. Judge Scirica interpreted the statement to mean that the District Court thought that McQuilken's condition – a left arm injury, and a congenital defect in his left eye – did not qualify him for the requested departure. There was no question that McQuilkin actually had that condition; the only question was whether that condition was of the type that empowered the District Court to grant the departure. Thus, the District Court's legal conclusion about its authority was at issue, not whether particular facts existed or whether its factual finding that McQuilkin was not as impaired as he claimed was correct.

Parenthetically, the dissent attributes great significance to the McQuilkin Court's use of the phrase "clear error." Because we used that phrase, the dissent argues, we "obviously were not reviewing a purely legal conclusion." Dissent at 9. It is fair to say that, given the legal conclusion we were reviewing, to have invoked clear error as to the standard

of review was, at best, confusing. But if "clear error" was inadvisedly used in McQuilkin, that error has not been repeated in any one of numerous precedential opinions in this area that have followed.

McQuilkin is but one of a number of our cases cited by the dissent to support a finding of jurisdiction to review denials of requests for downward departures. Without exception, however, in each case in which jurisdiction was found, it was because of a legal rather than a factual conclusion. See, e.g., United States v. Dominguez, 296 F.3d 192 (3d Cir. 2002) (finding jurisdiction to review a refusal to depart downward based on district court's erroneous legal conclusion that it lacked jurisdiction to consider the requested departure); United States v. Castano-Vasquez, 266 F.3d 228 (3d Cir. 2001) (district court adopted the proper legal standard/analytical construct for interpreting and applying newly enacted USSG § 5K2.20 and, citing McQuilkin, made clear that "[w]e lack jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted"); United States v. Bierley, 922 F.2d 1061 (3d Cir. 1990) (finding jurisdiction because district court's decision not to depart was predicated on legally erroneous impression that it did not have authority to depart). As the First Circuit observed, "in the context of departures, the touchstone of appealability is a mistake of law." United States v. Dewire, 271 F.3d 333, 337 (1st Cir. 2001).[6]

At bottom, then, the dissent is left

---

[6] An earlier First Circuit case explained when an appeal does and does not lie:

> If the judge sets differential factfinding and evaluative judgments to one side, and says, in effect, "this circumstance of which you speak, *even if it exists*, does not constitute a legally sufficient basis for departure," then the correctness of that quintessentially *legal* determination may be tested on appeal. But if the judge says, in effect, either that "this circumstance of which you speak has not been shown to exist in this case," or, alternatively, that "while this circumstance of which you speak might exist and might constitute a legally cognizable basis for a departure in a theoretical sense, it does not render this particular case sufficiently unusual to warrant departing," then, in either such event, no appeal lies.

United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994).

with United States v. Sammoury, 74 F.3d 1341 (D.C. Cir. 1996), the case, apart from McQuilkin, on which it principally relies. To be sure, the Sammoury Court concluded that if a discretionary refusal to depart is based on a clearly erroneous factual mistake, that decision is reviewable on appeal. It is just as surely wrong, and has not once been cited for this novel conclusion, much less followed, by any Court of Appeals. Indeed, the one Court of Appeals that has even discussed this conclusion has explicitly and persuasively rejected it. Dewire, 271 F.3d 333. We cannot say it better than that Court said it:

> The reasoning in Sammoury was based on a conflation of 18 U.S.C. §§ 3742(a)(2) and (e)(2), which authorize review of a sentence based on an incorrect application of the Sentencing Guidelines, with section 3742(e)'s mandate that appellate courts are to "accept the findings of fact of the district court [on sentencing matters] unless they are clearly erroneous" . . . We believe that Sammoury misapprehends the difference between a factually correct application of the sentencing guidelines, to which a defendant is entitled, and the award of a discretionary departure, to which he is not. An otherwise proper sentence is

> not a misapplication of the Sentencing Guidelines simply because the district court, as a matter of discretion, refuses to impose a lesser sentence than the law authorizes, even if its factual reasons for doing so are mistaken.

Dewire, 271 F.3d at 338-39 (quotation, citations and note omitted).

The Fourth Circuit has also rejected an exception for alleged factual mistakes to the rule that "the only circumstance in which review is available is when the district court mistakenly believed that it lacked the authority to depart." United States v. Underwood, 970 F.2d 1336, 1338 (4th Cir. 1992); see also United States v. Matthews, 209 F.3d 338, 352-53 (4th Cir. 2000). The Seventh Circuit concurs: "[A] determination by the sentencing judge that the facts of a case do not support a downward departure is not reviewable on appeal." United States v. Steels, 38 F.3d 350, 352 (7th Cir. 1994).

The dissent concedes this much: "we cannot review a purely discretionary refusal to depart . . . where the court correctly determines the relevant facts and applies the appropriate Guideline principles" and where it is "clear that the sentence did not result from the allegedly mistaken factual finding." Dissent at 3-4, 11. But would we not have to review to determine if it was "clear" that the facts were correctly determined or, as the

8

dissent phrases it, to see if the District Court had an "accurate perception of the facts"? Indeed, would we not, then, be addressing the merits of the departure request itself even before we are able to determine that we have jurisdiction to address the merits? See Mummert, 34 F.3d at 205.

It does not require any great leap of faith to believe that were the dissent to carry the day, there will nary be an appeal from the denial of a downward departure that will not contain an allegation of factual error. It also does not require any great leap of faith to predict that district courts may well eschew explanations for their refusals to depart and simply state that they are denying departures on discretionary (as opposed to legal) grounds, while recognizing their authority to grant those departures. As the Dewire Court put it:

> The precedents to which we adhere in today's decision rest on sound policy grounds. Because a trial court's refusal to depart is inherently discretionary and fact-based, a rule contrary to our precedent would invite frivolous appeals, discourage trial judges from explaining a refusal to depart, and require this court to second-guess, on a cold, and often factually dense record, the subjective influence that a questionable

fact may have exerted on a trial judge's ultimate sentencing decision.

Dewire, 271 F.3d at 339-40 (notes omitted). The Court illustrated the last point: if, for example, a defendant shows that one of a trial judge's three reasons for refusing to depart was wrong, the appeals court would have to consider whether either of the other two reasons would have been sufficient and the degree to which that reason influenced the judge's thinking, vitiating the broad discretion granted to sentencing judges.

Returning to where we began, our precedent and sound policy reasons mandate the conclusion that where a district court allegedly made a mistake of fact when, in the exercise of its discretion, it refused to grant a request for a downward departure, while aware of its authority to grant that request, we lack jurisdiction to review that decision.

## IV. CONCLUSION

Because the District Court correctly denied an adjustment for minor role in the offense, we will affirm the judgment and sentence. We lack jurisdiction to review the denial of the request for a downward departure.

9

RENDELL, <u>Circuit Judge</u>, Dissenting.

The line between an unreviewable discretionary refusal to depart and a legal or fact-based determination that the court lacks the authority to depart in a given case is often hard to discern. This is especially so given the language that district courts are routinely using in explaining their sentencing decisions. The District Court in the instant case made the following statement regarding the departure under § 5K2.12 of the Sentencing Guidelines:

> And with the coercion and duress, additionally, while I recognize my ability to depart under 5K2.12, without threat of physical injury resulting from unlawful actions of a third party, which I don't believe was in the testimony, or substantial damage to property resulting from unlawful action of a third party, the coercion and duress does not rise to the level that warrants departure.

In finding that we lack jurisdiction, the majority focuses on the Court's acknowledgment of its "ability to depart," concluding that the denial in this case was discretionary. I, on the other hand, believe that the District Court's determination was based on its erroneous factual finding that

there was no record evidence of threats of physical injury or physical damage to property. Therefore, rather than exercising its discretion, I submit that the Court was actually concluding that it lacked the <u>authority</u> to grant a § 5K2.12 departure based on the facts of this case.

Reading the Court's reasoning *in toto*, it becomes apparent that the District Court's statement regarding its "ability" to depart was not a legal conclusion; rather, the statement was a reference to the fact that the departure provision for coercion or duress in § 5K2.12 was potentially applicable here. However, the Court went on to conclude that the provision was <u>not</u> applicable, based on the lack of testimony regarding a factor that constitutes a prerequisite to its application. But, as Minutoli correctly points out, such testimony <u>was</u> presented. Accordingly, the sentence imposed "resulted from" an incorrect application of the Guidelines, and we can review it pursuant to 18 U.S.C. § 3742(a)(2).

Thus, I disagree with the majority's conclusion that we cannot review the denial of a departure in a case such as this, where the District Court acknowledged its general power under the Guidelines but then concluded that the case before it was not one in which a departure was authorized. In fact, I find a statutory foundation, as well as a basis in our own jurisprudence, for reviewing the factual findings supporting such a conclusion for clear error. Additionally, I derive guidance and support for this view in the

well-reasoned decisions of some of our sister courts of appeals that have confronted this issue. Based on my reading of these cases, I conclude that we can, and should, assume jurisdiction over appeals like this one, involving allegations that the district court based its denial of a departure on clearly erroneous factual findings.

## I.

I will begin by reviewing the statutory basis for our jurisdiction over criminal appeals challenging sentencing decisions, positing when and how we should exercise our jurisdiction in cases involving denials of downward departures. Then, in Parts II and III, I will discuss the case law that supports this reasoning.

Under 18 U.S.C. § 3742(a)(1) and (2), we are empowered to review sentences that are imposed "in violation of law" or "as a result of an incorrect application of the sentencing guidelines." Minutoli does not contend that her sentence violates any law under (a)(1). Rather, she argues that the District Court incorrectly applied the Sentencing Guidelines in that it clearly erred when it considered whether certain facts were present in order to qualify her for a departure under the pertinent Guideline provision, specifically, whether the offense was caused by coercion or duress as contemplated by § 5K2.12 of the Guidelines. That provision notes that this departure is reserved for cases in which "a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party" caused the defendant to commit the offense, but where the circumstances did not amount to a complete duress defense. The record contained evidence that Minutoli's boyfriend threw a stereo at her, threatened to kill her if she would not transport the drugs, informed her that he would have her followed throughout her trip to Europe, and intimidated her with a gun in their bedroom the night before she left. Yet the District Court ignored this evidence, essentially saying that it was not there.

Therefore, our jurisdiction to review this case is based on § 3742(a)(2). This is because when a district court makes an erroneous factual finding that is relevant to its determination as to whether the departure provision applies, the sentence has necessarily been imposed as a result of an incorrect application of the Guidelines. Here, the District Court incorrectly ignored evidence relevant to the application of the Guideline provision concerning coercion and duress. How can the Guideline have been properly applied in Minutoli's case where the District Court made an erroneous factual finding that resulted in the Guideline's <u>not</u> being applied at all, whereas a correct finding could have rendered the coercion or duress departure provision <u>applicable</u> to her situation? Under the statutory review authority contained in § 3742(a)(2), we have jurisdiction to monitor the District Court's application of the Guidelines, and we should do so here.

The majority seeks to draw a bright

11

line between legal and factual errors, but such a distinction has no significance when considering the statutorily-defined bounds of our jurisdiction. The statutory power to review simply is not limited to cases involving challenges to a district court's legal conclusions. Rather, we are to review if there appears either a violation of law or an incorrect application of the Sentencing Guidelines. The statute does not limit our jurisdiction in situations of "incorrect application" in the way the majority suggests; it does not remove from the scope of our review power situations in which the incorrect application of the Guidelines has occurred because of an erroneous factual finding. The majority would read such a caveat into the statute, but it just is not there.[7]

---

[7]At least some of the discord between the majority's position and my own seems to arise from our differing views regarding what it means to "apply" the Guidelines. The majority is correct that, in some sense, the District Court here "applied" the Guidelines correctly, insofar as it correctly identified the relevant departure provisions, and properly understood the factors that a defendant must prove before a district court is free to consider granting a departure under that provision. However, beyond identifying the correct legal standards, I believe that the proper "application" of the Guidelines must also include an accurate understanding of the facts that are pertinent to the analysis in which the court must engage when

This does not mean that all departure challenges are reviewable. For instance, § 3742(a) does not give us jurisdiction to review in a case where a defendant has succeeded in obtaining a downward departure, but argues that the departure should have been larger than it was. There really is no correct or incorrect way to apply the Guidelines once a departure provision is deemed satisfied in a particular case, and the district court clearly does have discretion to depart from the relevant range to the degree it sees fit. And, we cannot review a purely discretionary refusal to depart[8] where the

---

considering the relevant provision. In order to correctly apply the Guidelines to a given case, a district court must first identify the proper provisions of the Guidelines, and then it must consider the applicability or "fit" of those provisions in light of the correctly-determined facts of the case. In other words, the court must find the facts correctly, then correctly apply the appropriate Guideline to those facts.

[8]By "purely discretionary refusal to depart" I mean a case in which the district court finds that the facts do satisfy the relevant Guideline provision, such that the court has the authority to depart in the particular case before it, but where the court exercises its discretion in deciding not to grant the departure for some other reason. An example of this, based on a variation of the facts of this case, would be a case in which the defendant presents significant evidence

12

district court's view as to its legal power to depart under the Guidelines was correct – in other words, where the court correctly determines the relevant facts and applies the appropriate Guideline principles, but declines to depart. See United States v. Ruiz, 536 U.S. 622, 627 (2002) (listing cases from every court of appeals reaching this conclusion). Similarly, where a district court does make a legal or factual error, but nonetheless makes clear that the sentence did not result from that error because, even if the departure provision "fit," the court would not be inclined to grant it, we could not exercise our power of review. But we can, and should, review refusals to depart where the district court makes an error in applying the Guidelines, whether due to an erroneous factual determination or a misapplication of law to the facts, whereby the district court mistakenly concludes that it is without the specific authority to depart in the case before it, and the sentence has been imposed as a result of that error. Such cases fall squarely within § 3742(a)(2).

The Guidelines grant district courts

---

of threats or physical violence, leading the district court to conclude that the defendant qualifies for a departure under § 5K2.12. In such a case, the court would recognize its specific authority to depart for that particular defendant, but could discretionarily refuse to do so simply because the defendant seems like a "bad" person, or for any number of other reasons.

the authority to depart in cases where the facts "fit" within one of the relevant provisions, such as the provisions of Chapter 5 implicated in this case. Here, under § 5K2.12, the trial court only has the authority to depart downward if the situation involves threats of physical injury or substantial property damage, and if those threats caused the defendant to commit the relevant offense. So where the situation does not involve any threats of that sort, a district court does not have the power to invoke § 5K2.12 and depart downward.

Here, the Court made a clearly erroneous factual finding when it stated that there was no testimony of physical threats or violence in the record. As noted above, both Minutoli and Dr. Bernstein testified regarding various instances of threats and violence that occurred in the days leading up to Minutoli's trip. While there might be legitimate reasons for denying a departure in this case, even in the face of these threats and acts of violence, it appears as though the District Court ignored or forgot about this testimony altogether and based its ruling on the lack of such evidence. Accordingly, we have jurisdiction to review under § 3742(a)(2).

The majority's fear that a finding of jurisdiction here would force us to constantly review the merits of district court rulings in order to determine our jurisdiction is unfounded. We are already in the business of doing so, to a certain extent, every time we examine a district

13

court's sentencing ruling to decide whether it was an exercise of discretion or a legal determination regarding the court's power to depart or to apply a given Guideline provision. Looking out for clearly erroneous factual determinations, explicitly made by the sentencing court, in order to be certain that the sentence did not "result from" an incorrect application of the Guidelines, is no more than a necessary concomitant of our obligation to ensure that we have jurisdiction where it is precisely defined. And, we routinely do this in other types of cases as well. Cf. Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001) (holding that "we have jurisdiction to determine our jurisdiction" under a provision of the Immigration and Nationality Act that prevents our review of appeals by aliens who are removable based on aggravated felony convictions, and reviewing the facts presented to determine whether the petitioner's crime was an "aggravated felony").

I suggest that, in order to determine whether we have jurisdiction to review the denial of a downward departure, we should ask the following question: if the District Court had not made an erroneous factual finding, would the result have been the same? If we can categorically answer "yes," then we are saying that the District Court did not really care whether the facts or the law "fit," because the sentence was imposed as a result of her decision not to grant the departure in her discretion. In such a case, we are without jurisdiction to review. But in some cases, like this one, we cannot tell whether the court would necessarily have refused to depart, had it properly perceived the facts or properly understood the parameters of the Guidelines and how they should be applied in a given case. And in other cases, it is clear from the record that the court felt constrained by the Guidelines, misapprehending a lack of authority to depart, and it appears likely that the court would have departed, had it believed that it could do so. In these latter two categories of cases, we must conclude that the sentence was imposed not as a result of discretionary considerations, but rather as a result of an incorrect application of the Guidelines to the factual setting before the court. If a judge reasons that a factor necessary for departure is not present, but it either is present or is not a factor necessary as a matter of law, how is discretion exercised in making that determination at all? The answer is simple – no discretion is exercised. Again, the statutory power of review requires that we exercise our jurisdiction to review the sentence imposed on Minutoli as a result of an incorrect application of the Guidelines to the facts of her case.

II.

The majority reads our court's precedents as clearly foreclosing review in cases like this one, and the Government strongly advocates that we are bound by our precedent to find that we lack jurisdiction here. I emphatically disagree with that view. Although the case law related to our appellate jurisdiction over claims involving a district court's denial of a defendant's motion for a downward

departure is becoming increasingly confusing, I believe that a careful examination of the relevant decisions actually supports a finding that we have jurisdiction here.

The case that marks the starting point for our jurisprudence in this area is <u>United States v. Denardi</u>, 892 F.2d 269 (3d Cir. 1990). In <u>Denardi</u>, a defendant appealed his sentence, arguing that his case involved certain mitigating factors that were not adequately considered by the Sentencing Commission in the Guidelines. <u>Id.</u> at 270. We described the situation before us as one where "the district court did not misunderstand the law in applying the sentencing guidelines," and where the court "had discretion to grant the [departure] request" but, "nevertheless, refused to grant such relief." <u>Id.</u> at 271. On those facts, we held that we lack appellate jurisdiction over an appeal that "attacks the district court's exercise of discretion in refusing to reduce [a] sentence[] below the sentencing guidelines." <u>Id.</u> at 272.

Although I admit to having some doubt as to the soundness of certain aspects of our reasoning in <u>Denardi</u>, as well as the accuracy of our characterization of the District Court's statements there,[9] it is not necessary to challenge the result in <u>Denardi</u> in order to recognize that our decision there can (and should) be read to support the view that we have jurisdiction in the instant matter, especially in light of our subsequent decisions applying the rule we enunciated there. As the majority described it, the scenario we considered in <u>Denardi</u> was not one in which the District Court misunderstood, based on a mistake about either the law or the facts, its legal authority to depart; rather, the Court was empowered to grant a departure for that defendant but elected not to do so. The same has been true in many of our subsequent decisions applying <u>Denardi</u>.

Since <u>Denardi</u>, we have been faced with a multitude of appeals involving questions of our jurisdiction to review

---

[9]Based on the portions of the District Court's comments at the sentencing hearing that are quoted in the <u>Denardi</u> majority opinion, I am inclined to agree with Judge Becker, who, dissenting from the court's decision, indicated his belief that the majority decided a question that was not actually presented by that case. <u>See</u> 892 F.2d at 272 (Becker, J., dissenting) (stating that the record shows that the district court "felt legally prohibited from departing," while the majority decided "whether a <u>discretionary</u> refusal to depart is appealable"). However, I will assume here that the majority's interpretation was correct, and that the holding in <u>Denardi</u> that we lacked jurisdiction is limited to situations in which a district court in fact possesses and recognizes its legal authority to depart <u>on the facts before it</u>, but exercises its discretion in refusing to do so.

15

denials of requests for downward departures in a variety of circumstances.[10]

Only a fraction of these appeals have resulted in precedential opinions of our court,[11] and, as I will discuss below, only one of those opinions confronts a factual scenario similar to the one presented by this case.

In addition to our own opinions confronting this general issue, we are guided by the Supreme Court's recent opinion commenting on the limits on

---

[10]For example, see United States v. Gori, 324 F.3d 234, 239 (3d Cir. 2003) (finding jurisdiction to review the denial of a departure request based on the low quality of the drug involved); United States v. Dominguez, 296 F.3d 192, 194-95 (3d Cir. 2002) (finding jurisdiction to review the denial of a departure request based on family circumstances); United States v. Castano-Vasquez, 266 F.3d 228, 231 (3d Cir. 2001) (finding jurisdiction to review the denial of a departure request based on aberrant behavior); United States v. McQuilkin, 97 F.3d 723, 730 (3d Cir. 1996) (finding jurisdiction to review the denial of a departure request based on physical impairment); United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994) (remanding for clarification of the reasoning underlying the denial of a departure); United States v. Love, 985 F.2d 732, 734 n.3 (3d Cir. 1993) (finding jurisdiction to review the denial of a departure request based on assistance to state and local authorities); United States v. Georgiadis, 933 F.2d 1219, 1224 (3d Cir. 1991) (finding no jurisdiction to review the denial of a departure where the record did not show that the court failed to consider the request or misunderstood its authority); United States v. Bierley, 922 F.2d 1061, 1066-67 (3d Cir. 1990) (finding jurisdiction to review the denial of a departure request based on the defendant's role in the

offense).

[11]I respectfully disagree with the majority's explanation as to why many appeals raising issues related to our jurisdiction to review denials of downward departures result in opinions that are not precedential. The majority asserts that this is due to the fact that "our law in this area is settled." Maj. Op. at 6-7 n. 4. However, a perusal of just a few of the host of not precedential opinions on this subject reveals a trend of confusion and inconsistency. Compare, e.g., United States v. Jackman, 2003 WL 21754978 (3d Cir. July 30, 2003) (not precedential) (reviewing for clear error a district court's determination that the defendant's mental problems were not sufficiently atypical to warrant a departure), with United States v. Love, 2003 WL 21363404 (3d Cir. June 13, 2003) (not precedential) (finding no jurisdiction to review a district court's determination that the conditions of the defendant's pre-trial confinement were "not so harsh or inappropriate as to warrant a downward departure").

16

appellate jurisdiction in cases involving denials of departures. In <u>Ruiz</u>, the Supreme Court stated that, while we do not have jurisdiction "where the ground for appeal consists of a claim that the district court abused its discretion in refusing to depart," we can review where the district court's "sentencing decision rested on a mistaken belief that it lacked the legal power to grant a departure." 536 U.S. at 627. This statement of the Court in <u>Ruiz</u> does not imply any distinction based on whether the sentencing court's "mistaken belief" about its authority to depart arises from a legal or factual error. Thus, I urge that it is controlling here.

From the foregoing complicated set of cases, I would posit that there are five basic "rules" that are fairly straightforward: 1) where a district court properly apprehends its authority to depart in a given case, based on an accurate perception of the facts and the law, we are not empowered to review, <u>Georgiadis</u>, 933 F.2d at 1222; 2) where a district court mistakenly concludes that it may not depart in a given case, and its mistake is based on an incorrect understanding of the law or an improper interpretation of the Sentencing Guidelines' dictates, we have jurisdiction to review the legal issues, and will do so de novo, <u>Castano-Vasquez</u>, 266 F.3d at 229; 3) where a district court mistakenly concludes that it may not depart in a given case, and its mistake is based on an improper application of the Guidelines arising from a clearly erroneous determination of the facts, we will review the factual findings for clear error, <u>McQuilkin</u>, 97 F.3d at 730; 4) where we cannot discern the basis for a district court's refusal to depart, we will remand for clarification, <u>Mummert</u>, 34 F.3d at 205; and 5) where it is clear that the sentence resulted from, or "rested on," a district court's discretionary refusal to depart, notwithstanding a factual or legal error, we do not have jurisdiction to review a claim based on that immaterial mistake, <u>Ruiz</u>, 536 U.S. at 627. I think the majority would not take issue with the first, second, and fourth of these "rules," none of which directly impact this case. I will, therefore, focus exclusively on the third and the fifth, and I will explain how our court's case law leads me to find that such "rules" exist.

The case that most clearly stands for the proposition that we can review for clear error in a case like this one is <u>McQuilkin</u>. There, in an opinion authored by now-Chief Judge Scirica, we found jurisdiction and reviewed for clear error in a case that closely resembles the one before us. 97 F.3d at 730. The departure provision involved there was § 5H1.4, which allows a district court to depart downward where the defendant puts forth evidence related to an extraordinary physical impairment. <u>Id.</u> In finding that we had jurisdiction, we interpreted the District Court's sentencing decision as follows:

> At sentencing, the district court found McQuilkin's condition was "not that type of an impairment so severe and complete that the

downward departure [was] . . . warranted." The court's determination that McQuilkin did not have the kind of impairment described in § 5H1.4 which "warrants" a departure could have meant one of two things: that McQuilkin's impairment was not extraordinary enough to allow the court to depart under the authority of § 5H1.4; or that the nature of the impairment was sufficiently extraordinary to allow the court to depart, but that the court elected not to depart on this occasion. We believe the court meant the former, in which case, we review this finding for clear error.

McQuilkin, 97 F.3d at 730 (emphasis added). Importantly, McQuilkin appears to be the only case in which our court has ever considered whether and how we should engage in our review in a scenario like this one, where the District Court concludes, based on factual findings that

the defendant challenges as being erroneous, that it cannot depart. None of the cases finding that we lack jurisdiction pursuant to Denardi involve this precise question. See, e.g., Georgiadis, 933 F.2d at 1223 (stating that "the record does not show the district court believed erroneously it lacked authority to depart").

The majority seeks to distinguish McQuilkin from the instant case, but it cannot truly do so in a way that is meaningful. In McQuilkin, we were called upon to review a district court's determination that McQuilkin's physical impairments were "not extraordinary enough to allow the court to depart" at all under the relevant Guideline provision. 97 F.3d at 730. The defendant did not contend that the district court had applied the incorrect Guideline provision or that it had violated a federal statute; rather, he asserted that the district court's factual finding regarding the extent of his impairments, which rendered the relevant Guideline provision inapplicable, was erroneous. The District Court determined that his impairments were not extraordinary enough to warrant a departure, and, on appeal, McQuilkin argued that they were sufficiently extraordinary. McQuilkin has thus established in the jurisprudence of our court that the seriousness of an impairment, or, here, the severity of physical threats, is a factual finding that we review for clear error. How, then, can we say that a preliminary determination as to the existence of an impairment or threat is anything other than a factual finding that

18

we must review for clear error?

The most striking flaw in the majority's attempt to distinguish McQuilkin is its complete failure to acknowledge the standard of review that we applied there. We stated in McQuilkin, clearly and simply, that "we [would] review [the challenged] finding for clear error." Id. We obviously were not reviewing a purely legal conclusion, as the majority contends, because our review was for clear error, not de novo. Thus, we characterized the challenge brought before us in McQuilkin as one directed at a factual determination, rather than a pure matter of law, but we did not hesitate to exercise our jurisdiction. The use of the clear error standard confirms my view that McQuilkin dictates a finding that we have jurisdiction to review challenges to a district court's factual findings that support a denial of a downward departure. Given McQuilkin, we have jurisdiction to second-guess a district court's factual finding regarding the extraordinary nature of a defendant's situation, essentially reviewing the court's application of the Guidelines in the factual setting presented to us. How, then, can we not be empowered to second-guess the court's finding regarding the presence or absence in the record of evidence offered by a defendant where, as here, it led to an application of the Guideline in the factual setting presented that was clearly incorrect? Our statutory grant of jurisdiction, in addition to our decision in McQuilkin, dictates that we must engage in such review.

Here, as we noted above, the District Court essentially concluded that Minutoli failed to adduce evidence of the type of threats necessary to support a finding that any duress or coercion in her case somehow rendered her situation extraordinary enough to warrant a departure. This was erroneous. Applying our own case law, then, leads to a finding that we do have jurisdiction to review for clear error under these circumstances.

The majority seems inclined to abruptly end its inquiry into the reasoning of the District Court upon noticing its use of the phrase "while I recognize my ability to depart." However, our interpretation of the basis for the District Court's decision cannot be this superficial.[12] The rest of the Court's observations indicate that it actually concluded that the testimony offered by Minutoli would not support or authorize a departure under § 5K2.12 in this case. Where a court determines that the preconditions for departing under a given provision of the Sentencing Guidelines are not satisfied, and where this determination has motivated the court in its sentencing decision, the subsequent

---

[12]The Government urged at oral argument, and again by way of a supplemental letter brief filed after the argument, that our precedents preclude us from exercising jurisdiction in every case where a district court uses this type of standard language to reference its "discretion" under the Guidelines. This position is simply incorrect.

19

denial cannot be an exercise of "discretion." The court is simply not authorized to exercise its discretion in such a case. Under these circumstances, I believe McQuilkin makes it clear that we can review the underlying factual findings for clear error, and, indeed, we are obligated to do so.

### III.

Finally, the majority has indicated that, after considering the divergent opinions of the Courts of Appeals for the First and District of Columbia Circuits regarding the precise issue that we decide here, it is persuaded to adopt the reasoning expressed by the First Circuit in United States v. Dewire, 271 F.3d 333 (1st Cir. 2001). In Dewire, the defendant had pled guilty to "using a means of interstate commerce to induce a minor to engage in a sexual act." Id. at 335. The district court denied his motion for a downward departure based on aberrant behavior. Id. On appeal, Dewire contended that the court's refusal to depart "was based on an erroneous factual finding that he had downloaded child pornography from the Internet." Id. The First Circuit held that it lacked jurisdiction to review Dewire's claim related to the downward departure. Id.

In so concluding, the court explained its view that there are three exceptions to the general rule that a district court's refusal to depart is discretionary and not appealable. Id. at 337. Those exceptions, describing cases in which review is permissible, are claims that: 1) "the refusal to depart [resulted from] an incorrect application of the Sentencing Guidelines;" 2) "the refusal to depart otherwise violates the law;" or 3) "the district court mistakenly believed that it lacked the discretion to depart." Id. The court also noted its "steadfast[] refus[al] to review denials of downward departures where the district court did not misunderstand its legal authority to depart." Id. at 338. Summing up its position, the court stated: "An otherwise proper sentence is not a misapplication of the Sentencing Guidelines simply because the district court, as a matter of discretion, refuses to impose a lesser sentence than the law authorizes, even if its factual reasons for doing so are mistaken." Id. at 339. As a result, the court determined that it lacked jurisdiction over Dewire's appeal. Id. at 340.

But it would be wrong to conclude that the actual result in Dewire, given the facts presented there, is necessarily inconsistent with what I propose is the proper analysis. Setting aside the broader holding of the First Circuit, I would agree that Dewire's sentence should have been affirmed based on the fifth "rule" I posited above. That is, Dewire provides an excellent example of a case in which a fact-finding error was not material to the sentencing decision, leaving us without jurisdiction to review under § 3742(a)(2), because the court's sentencing discussion actually indicated that its decision was not influenced by the finding that the defendant challenged on appeal. Id. at 336. The trial judge explicitly stated at sentencing that even if the facts were to fit

20

within the relevant departure provision, he would still not be inclined to depart due to the nature of Dewire's offense. Id. In such a case, I would agree that we do not have jurisdiction to review because it is clear that the sentence did not result from the allegedly mistaken factual finding.

The most relevant and persuasive opinion on the issue before us, dealing with a very similar factual and procedural context, is the decision of the Court of Appeals for the District of Columbia in United States v. Sammoury, 74 F.3d 1341 (D.C. Cir. 1996). In Sammoury, the court concluded that it did have jurisdiction to review a challenge to the factual findings underlying a sentencing decision. There, the defendant had pled guilty to bank fraud based on her misappropriation of funds that were donated to her nonprofit employer. Id. at 1341. The district court denied her motion seeking a downward departure based on coercion, duress, and diminished capacity due to abuse by her husband. Id. On appeal, Sammoury asserted that the sentencing judge misapprehended the evidence offered in support of the departure motion and erroneously concluded that the abuse was not the cause of Sammoury's crime. Id. at 1343, 1346. After a lengthy discussion regarding appellate jurisdiction over such a claim, the D.C. Circuit determined that it was empowered to review the sentence. Id. at 1345.

The Sammoury court based its conclusion that it had jurisdiction to review factual findings underlying a denial of departure for clear error on the language of 18 U.S.C. §§ 3742(a)(2) and 3742(e). The court agreed that it would lack jurisdiction in a case where the district court "correctly understood the Sentencing Guidelines and the evidence, knew [it] could depart, and yet decided to stick to the Guideline range." Id. at 1343. However, the court also observed that, where "a district judge sticks to the Guideline range because he mistakenly believes he lacks authority to do otherwise, his sentencing decision is reviewable on appeal." Id. at 1344. Because such a situation exists where "clearly erroneous factual mistakes [are] used in determining whether to depart," the court concluded that § 3742(a)(2) provides a court of appeals with the power to review challenges to the sentencing court's factual findings. Id. at 1345. The court based this conclusion on its interpretation of § 3742, as well as its view that "[i]t is no more an infringement on the discretion of trial judges to set aside a sentence when the refusal to depart rests on a clearly erroneous factual mistake than to set aside a sentence when the refusal stems from a misinterpretation of the Guidelines." Id. Upon reaching this conclusion, the court went on to review the merits of Sammoury's claim, and it ultimately determined that the district court's findings were not clearly erroneous. Id. at 1346.

Given my reading of our precedents described above, I believe that the D.C. Circuit's opinion in Sammoury is quite consistent with our jurisprudence and supports our review power here.

21

However, a review of the case law of the other courts of appeals reveals that there is probably a circuit split on the precise issue before us here.[13]  The Courts of Appeals for the First and Fourth Circuits would apparently dismiss this case based on a lack of appellate jurisdiction.  See United States v. Underwood, 970 F.2d 1336 (4th Cir. 1992); United States v. Pierro, 32 F.3d 611 (1st Cir. 1994).[14]  On the other hand, the Courts of Appeals for the D.C., Second, Fifth, and Ninth Circuits have reviewed for clear error under similar circumstances.  See Sammoury, 74 F.3d at 1343-45 (providing an extensive discussion of the statutory basis for reviewing findings of fact underlying a denial of departure for clear error); United States v. Ardoin, 19 F.3d 177, 181 (5th Cir. 1994) ("We review the findings of fact under the 'clearly erroneous' standard, but legal application of the Guidelines is reviewed de novo."); United States v. Mickens, 977 F.2d 69, 72 (2d Cir. 1992) (reviewing the district court's factual findings for clear error where the appeal challenged the denial of a downward departure sought based on various mitigating circumstances); United States v. Roe, 976 F.2d 1216, 1217 (9th Cir. 1992) ("We review for clear error the [district] court's finding that a particular circumstance was not extraordinary").

I submit that our court is most properly aligned with the latter four circuits, in part because I find the reasoning of those courts – and particularly that of the District of Columbia Circuit in Sammoury – to be more persuasive, but also because I believe that our decision in McQuilkin has already placed us on that side of the issue.  I further submit that the

---

[13]I say "probably" because there is a lack of consistency in the reasoning of some courts, as noted infra in note 8.  Additionally, some courts, including our own in McQuilkin, have apparently adopted a view with minimal discussion of the issue.

[14]While Minutoli indicates that the Courts of Appeals for the Seventh and Eleventh Circuits would also find that they lack jurisdiction in a case like this one, I do not find that to be certain.  The Court of Appeals for the First Circuit also notes cases from those courts of appeals in support of its position in Dewire.  271 F.3d at 338 n.5 (citing United States v. Steels, 38 F.3d 350 (7th Cir. 1994), and United States v. Patterson, 15 F.3d 169 (11th Cir. 1994)).  However, those cases did not involve allegations of clearly erroneous factual findings; rather, the defendants in Steels and Patterson apparently challenged the district courts' understanding of the relevant laws and Guideline provisions.  It thus remains unclear how those courts would decide the jurisdictional question presented in this case, as they have not

yet been squarely presented with it.  Indeed, even the Dewire court noted conflicting authority from the Seventh Circuit on this question.  271 F.3d at 338 n.5.

majority view parts company with McQuilkin and, as a result, runs afoul of our court's Internal Operating Procedures, § 9.1.

## IV.

In light of the foregoing discussion, I cannot agree that we lack jurisdiction to consider Minutoli's appeal. Where it is based on a plainly mistaken determination of the facts, a district court's decision that a downward departure is not warranted or authorized under the Guidelines cannot be insulated from review. As I read the relevant authority, there is neither a statutory nor a binding precedential mandate that we lack jurisdiction in such a case. We should remain vigilant as we examine and construe the language used by the district courts in reaching sentencing decisions, as the ramifications have serious implications for criminal defendants. Specifically, we must carefully distinguish those situations in which a district court would be authorized to exercise its discretion from those in which it is not actually empowered to do so.

We cannot simply focus on a court's use of a magic phrase, such as "I recognize that I have discretion under the Guidelines," and neglect to consider the context in which such a statement is made. The District Court here used such a standard phrase as it noticed its general authority under the Guidelines. But where, as here, a district court proceeds to make a determination that the requirements of a given departure provision are not met in a given case, we must conclude that no discretionary call was actually made unless it is clear from the record that the sentencing decision did not result from that determination. And where, as here, the district court's determination that it lacks authority is based upon a clearly erroneous factual finding, we have jurisdiction to review and correct that error pursuant to both the relevant statute and our own case law. The majority concludes otherwise and refuses to address the clear error in the factual findings underlying the District Court's sentencing decision here. Therefore, I must respectfully dissent, and I strongly suggest that, in order for the majority's view to stand, this case must be addressed by the court en banc.

23