NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4887
_____

UNITED STATES OF AMERICA

v.

SANN THACH,
                    Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-07-cr-00087-001)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2010
_____

Before:  AMBRO, FISHER, and GARTH, Circuit Judges

(Opinion filed: January 5, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

        In August 2008, Sann Thach was found guilty after a jury trial of conspiracy to

possess with intent to distribute MDMA and methamphetamine, in violation of 21 U.S.C.

§ 846, and possession of MDMA and methamphetamine with intent to distribute, in

violation of 21 U.S.C. § 841(a)(1). On appeal, he argues that the District Court erred in denying his motion to suppress the evidence of drugs and U.S. currency. He challenges as well his sentence. We affirm the District Court's rulings on both issues.

## I. Background

In January 2007, the Bureau of Immigration and Customs Enforcement ("ICE") was investigating an ecstasy drug "ring" between Canada and Philadelphia. Drugs were shipped from Canada to Philadelphia and then distributed to other regions. Agents had placed Nahn Le's house in Philadelphia under surveillance because they had information that she had recently received a large shipment of ecstasy pills. One evening, while surveilling the location, the agents' suspicions were aroused by a car parked nearby with North Carolina license plates. Later that evening the agents saw three people leave the Le house and approach the car. One of them, Thach, had a plastic bag, which he placed in the trunk. The three drove away, Thach in the backseat, his co-defendant, Kareem Martin, in the passenger seat, and the third person, Karisa Hilley, driving. The agents called for local police backup. Officer Kelly responded, followed the car, and stopped it after it exceeded the speed limit by 25 miles per hour. Shortly thereafter, Officer Fredericksdorf arrived.

He removed Thach from the car for questioning while Officer Kelly spoke with Hilley. From his conversation with Hilley, Kelly learned that the car was rented to someone else, and Hilley was not an authorized driver. Fredericksdorf did a pat down of Thach, during which he removed a bundle of cash. When asked from where they were coming, all three occupants of the car gave the officers a different story. Suspecting that

2

there were drugs in the car, Officer Kelly asked Hilley if he could search the car. Hilley agreed and signed a consent form. Kelly then searched the trunk and found two cereal boxes filled with ecstasy pills. Thach was arrested and the evidence was given to the federal agents.

Prior to trial, Thach moved to suppress the physical evidence on the ground that the traffic stop and frisk were illegal, and that Hilley's consent to search was invalid. The District Court denied the motion.

Prior to trial, Thach, in concert with his then-girlfriend, sent false IRS filings to the U.S. Attorney's Office. The forms were issued in the names of the District Judge assigned to his case, the U.S. Attorney, and the prosecutor in the U.S. Attorney's Office (collectively, the "Government officials"). The forms falsely stated that each of the Government officials had earned $200,000,000 in 2008. Thach filed these documents, accompanied by an "affidavit of facts," with the District Court, claiming he was entitled to recover a total of $600,000,000 from the Government officials. Phone calls between Thach and his girlfriend revealed that he intended to use this scheme as a way to get his case dismissed and to get money from the Government. (This act, not uncommon, is sometimes referred to as a "redemption scheme.") The District Court dismissed these claims.

Thach was subsequently convicted by a jury of the crimes noted above. At sentencing, the District Court calculated the advisory Guidelines' range to be 262 to 327

months.[1]  It sentenced Thach to 262 months' imprisonment, five years of supervised release, a $1,000 fine, and a $200 special assessment.  Thach now objects to the two-level enhancement for obstruction of justice and claims that the District Court should have imposed a below-Guidelines sentence.

For the reasons that follow, we affirm the District Court's denial of Thach's motion to suppress and his sentence.[2]

### III. Discussion

**A. Motion to Suppress**

We review the District Court's order denying the motion to suppress for "clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts."  *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

Thach argues that the officers engaged in a series of unlawful actions, each of which demands suppression of the physical evidence found in the car and on Thach's person.  He claims that they did not have a legal basis to stop the car.  Nor, he urges, did Officer Fredericksdorf have a lawful basis to frisk him and remove the cash.  Finally, he argues that the consent to search the car was involuntary.  We disagree with each assertion.

---

[1] Thach's base offense level was 34 and his criminal history category was IV.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 18 U.S.C. § 1291 and 18 U.S.C. § 3742.

The car in which Thach was riding was stopped for speeding. Any violation of the traffic code provides a ground for a legitimate traffic stop, "even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249 (3d Cir. 2006) (interpreting *Whren v. United States*, 517 U.S. 806, 813 (1996)). Pursuant to a valid stop, a police officer may order the occupants—including passengers—out of the car "pending completion of the stop." *Maryland v. Wilson*, 519 U.S 408, 415 (1997).

The District Court credited the officer's testimony that, by following the car for some time, he observed that the car was traveling about 80 miles per hour, 25 miles per hour over the limit. Our review of the District Court's factual findings that are based on credibility determinations proceeds with great deference, particularly where the District Court's "decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence." *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997). In this situation, we do not believe that the Court was clearly in error. Thus, we conclude that the initial traffic stop and questioning of Thach was lawful.

After a traffic stop, an officer may frisk a person whom he has ordered out of the car if he has a reasonable suspicion that the person is armed. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111-13 (1977) (per curiam). Reasonable suspicion is formed when, under the totality of the circumstances, the officer reasonably believed his safety was threatened. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The totality of the circumstances includes an officer's "knowledge, experience, and common sense judgments about human behavior." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). Here,

5

we believe that there was ample evidence to establish the reasonableness of Officer Fredericksdorf's suspicion that Thach was armed and dangerous. He knew the occupants of the car were suspects in a drug investigation.[3] Based on his training and experience, he also knew that guns often accompanied drugs. Both officers became aware that the occupants' stories were inconsistent and that none of them was authorized to drive the car. Finally, in testimony credited by the District Court, Officer Fredericksdorf explained that Thach's furtive conduct during the stop suggested that he might be attempting to stash something. In this context, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Nor do we believe that seizing the cash was unlawful. Non-weapon contraband will not be suppressed where an officer feels a "hard, bulky object" and seizes it on the belief it is a gun. *See, e.g.*, *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995). In this case, Officer Fredericksdorf testified that he felt a brick-like bulge, which he removed because he did not know for certain whether it was a weapon. He testified that he thought it could have been a gun in a square holster. The District Court was reasonable in crediting this testimony. Here, as in *Edwards*, the officer "could reasonably

---

[3] This information was relayed to them from the ICE agents, who had reliable information that Le had received a shipment of drugs and had observed Thach leaving Le's home with a bag. As we have held elsewhere, "[i]t is well settled that reasonable suspicion can be based on information gathered from another person." *Robertson*, 305 F.3d at 168.

have confused the square, bulky mass . . . for a small handgun sheathed in a square, leather holster." *Id.*

Finally, we reject Thach's claim that Hilley's consent to search was not voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), requires that the totality of the circumstances demonstrate that consent was voluntary. The District Court also credited testimony that Hilley's consent was knowing and voluntary. We agree. There was none of the signature signs of coercion, such as a display of force, authority, or intimidation. The officers did not draw their guns, handcuff Hilley, or deceive or intimidate her into signing the consent form. Nothing in the record suggests that Hilley's ability to understand the consequences of consent was compromised by her background, education, or intelligence.

Thus, we conclude that the officers' actions were consistent with Fourth Amendment requirements. Accordingly, we affirm the District Court's denial of the motion to suppress the cash seized from Thach and the drugs seized from the car.

## B.  The Sentence

We review a District Court's application of the now advisory Sentencing Guidelines for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005). For a sentence to be procedurally reasonable, sentencing judges must follow a three-step sentencing process: (1) calculate a defendant's sentencing range under the Guidelines; (2) rule on motions for departures of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines' calculation; and (3)

"exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (internal citations and quotation marks omitted). "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

As noted above, Thach argues that the District Court erred in applying a two-point enhancement for obstruction of justice and for not imposing a below-Guidelines sentence in light of his "cooperation." We disagree.

Section 3C1.1 of the Guidelines provides for a two-level enhancement for obstruction of justice. His conduct falls squarely within what is contemplated by that provision. As its application note points out, examples of obstruction of justice include "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" and "providing materially false information to a judge." U.S.S.G. § 3C1.1 app. 4. It also includes any "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code." *Id.* Section § 1503 of Title 18 prohibits an attempt to influence improperly or intimidate a federal prosecutor or judge. The record shows that Thach engaged willfully in this scheme and that he believed it would succeed. The District Court did not abuse its discretion in applying a § 3C1.1 enhancement.

8

Thach also claims that he was entitled to a two-point reduction for acceptance of responsibility pursuant to § 3E1.1 of the Guidelines.[4] He explains that his defense at trial was inhibited because of prior proffer sessions with the Government, and therefore he should be awarded a two-point reduction, presumably to make up for this alleged limitation. The acceptance-of-responsibility adjustment is typically applied to those defendants who plead guilty, and "is not intended to apply to a defendant who puts the government to its burden of proof at trial." *Id.* § 3E1.1 app. 2. In any case, only Thach is to blame for aborting his cooperation with the Government. A two-point reduction for acceptance of responsibility is also inconsistent with the obstruction-of-justice enhancement, as the latter demonstrates "that the defendant has not accepted responsibility for his criminal conduct." *Id.* app. 4. The District Court did not err, plainly or otherwise, by not applying the two-point reduction here.

In a related claim, Thach suggests that the District Court's decision not to impose a below-Guidelines sentence was unreasonable. On appeal, he argues the District Court should have departed downward under § 5K2.2(a) of the Guidelines, which allows departures in calculating the Guidelines' range for "mitigating circumstance[s] . . . not adequately taken into consideration by the Sentencing Commission . . . to advance the objectives set forth in 18 U.S.C. § 3553(a)(2)." *Id.* § 5K2.0(a)(1). Thach asserts as a mitigating circumstance that he did cooperate to some extent (citing the proffer sessions), which should receive some credit even though he ultimately proceeded to trial. We are not persuaded.

---

[4] Thach did not argue this claim at sentencing and so we review it for plain error.

In the first instance, Thach confuses departures and variances. At sentencing, Thach did not make a formal motion for a § 5K2 departure. Rather, he argued for a variance (which draws on the 18 U.S.C. § 3553(a) factors) based on his attempted, but aborted, cooperation and because his co-defendants received lower sentences. Insofar as Thach means to attack the District Court's failure to depart at step two of our sentencing analysis under *Gunter*, 462 F.3d at 247, his argument fails, as we lack jurisdiction over a District Court's decision not to exercise its discretion to depart from the advisory Guidelines. *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004).

We also believe that the District Court's assessment of the § 3553(a) factors, and its decision not to vary outside the advisory Guidelines' range, was reasonable. Though a District Court certainly has the discretion to vary outside the Guidelines, *Gall*, 552 U.S. 38, it is under no obligation to do so. Here, the Court applied a sentence at the low end of the sentencing range. It considered on the record Thach's arguments in connection with § 3553(a). It noted that, although his co-defendants had received lesser sentences based on their substantial assistance, Thach was not a similarly situated defendant. Unlike his co-defendants, the sentencing Court believed that Thach had not accepted responsibility or evidenced a likelihood of rehabilitation.

We conclude that the District Court did not commit procedural error in sentencing. Nor was the sentence substantively unreasonable in light of the Court's careful consideration of the § 3553(a) factors. We thus affirm Thach's sentence.